IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF MASON S.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF MASON S., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

ARTURO C., APPELLANT, AND BERTHA S., APPELLEE.


Filed April 28, 2026.    No. A-25-610.


Appeal from the Separate Juvenile Court of Douglas County: CHAD M. BROWN, Judge. Affirmed.

Ryan M. Hoffman, of Bressman, Hoffman & Jacobs, P.C., L.L.O., for appellant.

Shinelle L. Pattavina, Deputy Douglas County Attorney, for appellee State of Nebraska.


MOORE, PIRTLE, and FREEMAN, Judges.

PIRTLE, Judge.

INTRODUCTION

Arturo C. appeals the order of the separate juvenile court of Douglas County, terminating his parental rights to his child. Upon our de novo review, we affirm the juvenile court's order.

BACKGROUND

Arturo is the father of Mason S., born June 2022. On September 13, 2022, the State filed a supplemental petition to adjudicate Mason based on Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2024). The supplemental petition alleged that Mason lacked proper parental care by reason of the fault or habits of Arturo in that: (a) Arturo was incarcerated; (b) Arturo and Bertha S., Mason's mother, had engaged in domestic violence in the family home, placing Mason at risk of harm; (c) Arturo had been physically abusive to Bertha and had been physically abusive to one or more of

- 1 -

Bertha's children; (d) Arturo had made threats to Bertha and had made threats to one or more of Bertha's children; (e) Arturo had failed to provide Mason with proper parental care, support, supervision, and/or protection; (f) Arturo had failed to provide Mason with safe, stable and/or appropriate housing; and (g) the above allegations place Mason at risk of harm. Mason was removed from the home on the same day the supplemental petition was filed and placed in the temporary custody of the Nebraska Department of Health and Human Services (DHHS).

A hearing was held on the supplemental petition and Arturo pled no contest to allegations (a), (b), (f) and (g). Following the hearing, the court entered an order on November 23, 2022, finding that Mason came within the meaning of § 43-247(3)(a) by a preponderance of the evidence. The court ordered Arturo to (1) have agency supervised visitation, (2) have no contact with Bertha, (3) complete a psychological evaluation with a parenting assessment, (4) successfully complete "Breaking the Cycle" program, (5) enroll in and successfully complete an accredited domestic violence program that includes foundational classes and batterer's intervention counseling, (6) maintain safe and stable housing and make the home available for walkthroughs upon request by the case manager, and (7) maintain a stable and legal source of income. These requirements remained consistent throughout the case. In July 2024, the court added that Arturo needed to participate in individual therapy and submit to random urinalysis testing, to include alcohol testing. In October the court added that Arturo was not to possess or ingest alcohol and/or controlled substances.

On March 21, 2025, the State filed a second motion for termination of parental rights, alleging that statutory grounds to terminate existed under Neb. Rev. Stat. § 43-292(1), (2), (6), and (7) (Reissue 2016), and that terminating Arturo's parental rights was in Mason's best interests.

A termination hearing was held on July 2, 2025. The State called Beth Cohen, Mason's foster mother. She testified that Mason was placed with her in September 2022, when he was about 10 weeks old. Mason had just turned three years old at the time of the hearing. Cohen testified that when Mason was first placed with her, Arturo was not having visits with Mason because he was incarcerated. Arturo started having visits once per week in December 2022 or January 2023. Cohen testified that from the time the visits started until June 2024, Arturo missed about half of his visits. Arturo's visits stopped in June 2024, and he did not have any further visits until May 2025. Cohen testified that between May 2025 and July 2, 2025, the date of the termination hearing, Arturo had missed three or four visits.

Shana Clapper, the owner of Nebraska Drug and Alcohol Screening, testified that in May 2025, she received a referral from DHHS to conduct urinalysis testing on Arturo once per week. A specimen collector tried to contact Arturo two or three times per week for three weeks. The collector made contact on May 22, but Arturo told him he was "too busy with his son" and he would call back but never did. Clapper testified that Arturo was discharged from the service due to his failure to respond to requests for urinalysis testing from May 13 to June 8, 2025. No samples were provided during this time.

Kaitlin Hahn works for DHHS child and family services and supervises a team of initial assessment workers who specialize in domestic violence. Hahn testified that her team was assigned the "check-in case" for this family in 2022, and she supervised the case up until Mason's removal in September 2022. Hahn testified that her team received three domestic violence related intakes regarding this family in 2022.

Hahn interviewed Arturo in August 2022, while he was in jail, regarding disclosures made by Bertha's children and ongoing domestic violence investigations that DHHS had been assigned. Arturo was in jail at the time, due to an assault against Bertha, and was awaiting trial. Two of Bertha's other children had previously participated in forensic interviews and gave detailed accounts of power and control by Arturo. They also reported concerns about Arturo's alcohol use. Arturo did not take any responsibility during Hahn's interview and blamed the children.

Cindy Johnson supervised the case manager for this case from February 2023 to October 2024. She testified that the court became involved with Arturo and Mason due to domestic violence by Arturo. Arturo was incarcerated during the first two months she oversaw the case. After he was released, the case manager consistently made efforts to contact Arturo but his communication with her was "sporadic" throughout her time assigned to the case. Johnson testified that supervised visits started after Arturo was released from jail. The agency supervising visits reported more than the usual number of cancellations by Arturo. Johnson stated visits were supervised throughout the time she was on the case due to the lack of progress by Arturo in alleviating the safety concerns that caused the case to be filed.

Johnson testified when she became involved with the case, the court had ordered Arturo to have no contact with Bertha. Johnson was made aware Arturo had violated the no contact order in January 2023 when he called Bertha during one of her supervised visits. Johnson testified that there were subsequent contacts between Bertha and Arturo. In August 2023, she learned that Arturo had attended five of Bertha's visitations with Mason. In September, there was an incident in which Arturo kicked in Bertha's front door, pushed her, and took her phone. This incident led her to file for a protection order. In December, Bertha admitted at a family team meeting she had been living with Arturo for the past year, in violation of Arturo's court orders.

Johnson testified Arturo completed a psychological evaluation in June 2024 but did not follow the recommendations. The report from the evaluation was offered and received into evidence. The evaluation rated Arturo at "moderate-high risk" to engage in future child maltreatment. The report explained that "[h]is denial, blaming, having two convictions for domestic assault over a 10-year period, and other risk factors contribute to this report. [Bertha's other children] report inappropriate parenting and disciplinary strategies. . . ." The report recommended alcohol monitoring, outpatient mental health therapy, and that the court "proceed with high caution about reunification efforts of infant son Mason with [Arturo]."

Johnson testified that Arturo signed up for a domestic violence program in September 2023 but never completed it. He was discharged from the program due to lack of participation. While Johnson was involved with the case, Arturo did not complete Breaking the Cycle, a program to help families break the cycle of domestic violence. Johnson testified that Arturo was also ordered to have safe and stable housing but he would not allow the caseworker to do a walkthrough of his home to verify it was safe and stable.

Johnson testified that during her time as supervisor of the case, she never believed she could return Mason to Arturo's care because there were still domestic violence concerns. Johnson testified that based on her training and experience, children who observe domestic violence often have developmental delays and experience a significant amount of trauma and fear. Johnson was concerned because Arturo had not addressed his domestic violence, meaning he was not a safe parent, which prevented her from making a recommendation for Arturo to transition to

unsupervised visits during the time she was assigned to the case. Johnson opined that Arturo was not a fit parent at the time her involvement ended because he continued to place himself in violent situations and had not placed Mason's needs above his own. According to Johnson, during her time on the case, Arturo did not make measurable, sustained progress toward completing his court orders and did not correct the concerns which led to Mason's removal. Johnson testified that terminating Arturo's parental rights was in the best interests of Mason because Arturo continued to engage in domestic violence and was not a safe parent for Mason to live with.

Abrina Alvarez had been the case manager since October 2024. She testified that when she took over the case, she learned that the former case manager's last contact with Arturo was in July 2024. She also learned that Arturo had been noncompliant with the court's orders. Further, Arturo had not had a visit with Mason since July 2024, but there was a protection order entered in September prohibiting Arturo from seeing Mason.

Alvarez testified that when she took over the case in October 2024, she tried to contact Arturo numerous times per month by calling him, emailing him, checking last known addresses, reaching out to family members, and reaching out to his attorney. However, her first contact with him was not until the end of March 2025, after the second motion for termination was filed. She arranged for supervised visits to start again on May 15, 2025, with plans for Arturo to have visits twice per week. Alvarez testified that at the end of June, Arturo canceled a visit and indicated he wanted to relinquish his parental rights.

Alvarez testified that on several occasions she gave Arturo information on how to get started with a domestic violence program, and each time he told her he would get it set up. As of the date of the hearing, Arturo had not completed any of the domestic violence programs ordered by the court. Similarly, Alvarez testified that she talked to Arturo about starting the Breaking the Cycle course, and he would say he would sign up for it, but at the time of trial he had not completed any of it. Arturo also had not participated in any individual therapy, despite indicating to Alvarez on multiple occasions that he would set it up. Regarding his living arrangements, Arturo told Alvarez he was renting a room in Omaha, but no walkthrough had taken place. Alvarez testified that she believed Arturo was employed.

Alvarez testified she could not place Mason in Arturo's home because she did not believe Arturo was a safe person, based on his history of violence and aggression, which he had failed to address. Alvarez opined that Arturo is not a fit parent because he has been given an opportunity to rehabilitate himself and to reunify with Mason through services offered by DHHS but he has not taken advantage of it. She noted that Mason had remained out of the care and custody of his father since he was originally removed in September 2022. Alvarez further testified that in her opinion, it was in Mason's best interests to terminate Arturo's parental rights, based on his overall progress, or the lack thereof, in the case, the amount of time Mason has been in DHHS' custody, and because Mason deserves permanency.

Following the termination hearing, the juvenile court entered an order finding that the State proved the statutory grounds alleged in the second motion for termination by clear and convincing evidence, and that terminating Arturo's parental rights was in Mason's best interests.

ASSIGNMENTS OF ERROR

Arturo assigns the juvenile court erred in (1) finding that the State proved by clear and convincing evidence that his parental rights should be terminated pursuant to § 43-292(1), (2), (6), and (7), and (2) finding that terminating his parental rights was in Mason's best interests.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court. *In re Interest of Denzel D.*, 314 Neb. 631, 992 N.W.2d 471 (2023). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over the other. *Id.*

ANALYSIS

*Statutory Grounds for Termination.*

For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that such termination is in the child's best interests. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). The State must prove these facts by clear and convincing evidence. *Id.*

Arturo argues that the juvenile court erred in finding that the State proved statutory grounds existed to terminate under § 43-292(1), (2), (6), and (7). We first address whether § 43-292(7) has been met.

Subsection (7) allows for termination when the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. It operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Becka P. et al., supra.* In a case of termination of parental rights based on § 43-292(7), the protection afforded the rights of the parent comes in the best interests step of the analysis. *In re Interest of Becka P. et al., supra.*

Mason was removed from the home in the present case on September 13, 2022. Since the day he was removed, he has never returned to Arturo's care and has remained in out-of-home placement. At the time the State filed the second motion for termination of parental rights on March 21, 2025, Mason had been placed outside the home for 30 continuous months. Therefore, Mason had been out of the home for more than 15 of the most recent 22 months; the statutory requirement for termination under § 43-292(7) has been met.

If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Becka P. et al., supra.* Because we find that the State presented clear and convincing evidence that a statutory ground to terminate existed under § 43-292(7), we need not address the other statutory grounds.

*Best Interests.*

Arturo next assigns that the juvenile court erred in finding that terminating his parental rights was in Mason's best interests. Under § 43-292, in addition to providing a statutory ground,

- 5 -

the State must show that termination of parental rights is in the best interests of the child. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must show that the parent is unfit. *Id.* There is a rebuttable presumption that the best interests of the child are served by having a relationship with his or her parent. *Id.* Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id.* The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id.* And while both are separate inquiries, each examines essentially the same underlying facts. *Id.*

Based on the record before us, Arturo was in jail when this case started, charged with domestic violence committed against Mason's mother. At this time, Arturo had a history of domestic violence. For well over two years numerous services have been offered to help Arturo achieve the court-ordered requirements and reunite with Mason. Arturo has failed to participate in services and failed to meet the court's requirements. Several of the court's orders were related to domestic violence, such as the order to complete Breaking the Cycle and to complete a domestic violence program. Because Arturo has not participated in and completed these programs, domestic violence continues to be a safety concern for Mason. Arturo also continued to have contact with Bertha, a victim of his domestic violence, despite the court's no-contact order.

Visitations between Arturo and Mason have been inconsistent throughout the case for various reasons. Arturo had no visits with Mason between July 2024 and May 2025. Visits have remained supervised, based on concerns that Arturo cannot provide a safe environment because he has failed to address his propensity for domestic violence.

Johnson testified that during her time on the case Arturo did not make measurable, sustained progress toward completing his court orders and did not correct the concerns which led to Mason's removal. Alvarez opined that Arturo is not a fit parent because he has been given an opportunity to rehabilitate himself and to reunify with Mason through services offered by DHHS, but he has not taken advantage of it. Alvarez further testified that in her opinion, it was in Mason's best interests to terminate Arturo's parental rights based on his overall progress, or the lack thereof, in the case, the amount of time Mason has been in DHHS' custody, and because Mason deserves permanency.

Mason was removed from Arturo's care when he was about 10 weeks old and he had just turned 3 years old at the time of the termination hearing. He had been in foster care for 30 months out of 32 or 33 months of his life. Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Cameron L. & David L.*, 32 Neb. App. 578, 3 N.W.3d 376 (2024). Further, Nebraska courts have recognized that children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *Id.* Arturo has failed to put himself in a position to properly parent his child. It does not appear Arturo will become a fit and capable parent any time soon. Mason deserves stability and security in his life. He should not be suspended in foster care when his father is unable to rehabilitate himself. Accordingly, based on our review of the

evidence, we agree with the juvenile court that Arturo was unfit and that terminating his parental rights was in Mason's best interests.

## CONCLUSION

We conclude the State proved by clear and convincing evidence that grounds to terminate Arturo's parental rights to Mason existed under § 43-292(7) and that terminating his parental rights was in Mason's best interests. The juvenile court's order is affirmed.

AFFIRMED.